IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

| | |
|---|---|
| ABC LOAN CO. OF MARTINEZ, LLC, | * |
| Plaintiff, | * |
| v. | * CV 123-097 |
| GRUNER ENTERPRISES, LLC; CARISMA FINANCIAL CORP.; and ROBERT GRUNER, III, | * |
| Defendants. | * |

O R D E R

Before the Court are Plaintiff's motions for default judgment. (Docs. 19, 24, 28.) Defendants have not appeared, pled, or otherwise defended this action. For the following reasons, Plaintiff's motions are **GRANTED**.

I. BACKGROUND

Because Defendants failed to respond to Plaintiff's complaint, the Court deems all well-pleaded factual allegations in the complaint as true for purposes of its analysis. See Surtain v. Hamlin Terrace Found., 789 F.3d 1239, 1245 (11th Cir. 2015). Accordingly, the Court finds the following facts admitted.

On February 17, 2022, the Parties entered a settlement agreement resolving litigation in Gruner Enters., LLC v. ABC Loan

Co. of Martinez, LLC, No. CV 121-007 (S.D. Ga. June 5, 2020) (the "Underlying Action"). (Doc. 1, at 2, 7-14.) Under the settlement agreement, Defendants were to pay Plaintiff $500,000.00 in thirty-six equal installments of $13,888.89. (Id. at 2.) The settlement agreement further provided if Defendants failed to timely make a payment, they would be in default upon receipt of written notice from Plaintiff and would have ten days thereafter to cure it. (Id. at 3, 9.) If Defendants failed to cure their default, the Parties agreed Plaintiff's sole remedy would be "the entry of a judgment in the [Underlying Action] (or a subsequent action initiated by [Plaintiff], if necessary) equal to the unpaid balance of the [s]ettlement [p]ayments (i.e., $500,000.00 minus the total [i]nstallment [p]ayments made by [Defendants])." (Id. at 3, 9-10.) But the Parties also agreed, if legal action was required to enforce the settlement agreement, "the prevailing Party shall be entitled to recover its reasonable attorneys' fees and costs." (Id. at 3, 11.)

Defendants failed to make the installment payments due on October 15, 2022 and November 15, 2022. (Id. at 3, 20-21.) Each time, Plaintiff provided Defendants written notice of their default and informed them they had ten business days from the date they received the written notice to cure it. (Id.) Defendants failed to do so. (Id. at 3.) Thus, on May 1, 2023, Plaintiff sent Defendants written notice that the outstanding balance was

2

due and payable in full and, if they did not pay the outstanding balance in full within ten days of receiving the notice, they would be responsible for paying costs and reasonable attorney's fees under O.C.G.A. § 13-1-11. (Id. at 3, 27-29.) Defendants again failed to cure their default. (Id. at 3.)

Plaintiff filed this lawsuit on July 20, 2023, asserting two claims: (1) breach of contract; and (2) attorney's fees pursuant to O.C.G.A. § 13-1-11. (Id. at 3-4.) Plaintiff seeks $443,080.55 in damages, including $402,777.77 Defendants owe Plaintiff under the settlement agreement and $40,302.78 in attorney's fees and costs. (Id. at 4-5.) Defendants Gruner Enterprises, LLC ("Gruner Enterprises") and Carisma Financial Corp. ("Carisma") were served on July 22, 2023. (Doc. 10, at 1, 3; Doc. 11, at 1, 3.) On November 1, 2023, Plaintiff moved for Clerk's entry of default against Defendants Gruner Enterprises and Carisma, and the Clerk entered default against them the same day. (Docs. 12, 13.)

On October 13, 2023, Plaintiff moved for an extension of time to serve Defendant Robert Gruner, III ("Gruner") by publication based on evidence he was attempting to evade service. (Doc. 9.) The Court found Defendant Gruner was likely evading service and granted Plaintiff's motion. (Doc. 14.) The Clerk served Defendant Gruner by publication on November 8, 2023. (Doc. 17.) On January 9, 2024, Plaintiff moved for Clerk's entry of default against

3

Defendant Gruner, and the Clerk entered default against him the following day. (Docs. 22, 23.)

On November 15, 2023, Plaintiff filed a motion for default judgment against Defendants Gruner Enterprises and Carisma, and on January 12, 2024, Plaintiff filed a motion for default judgment against Defendant Gruner. (Docs. 19, 24.) Because Plaintiff seeks attorney's fees, the Court ordered Plaintiff to file detailed documentation of the fees and costs it incurred and deferred ruling on Plaintiff's motions. (Doc. 27.) On April 16, 2024, Plaintiff complied with the Court's April 10, 2024 Order, and the Court took Plaintiff's motions under advisement. (Doc. 28.) However, in considering Plaintiff's motions, the Court discovered Plaintiff inadequately pled diversity jurisdiction and ordered Plaintiff to file a supplemental brief that properly listed Plaintiff, Defendant Gruner Enterprises, and Defendant Gruner's citizenships. (Doc. 29.) The Court once again deferred ruling on Plaintiff's motions for default judgment until Plaintiff complied with the Court's April 25, 2024 Order. (Id. at 4.) Plaintiff filed its supplemental brief on May 15, 2024. (Doc. 30.) The Court can now address Plaintiff's motions for default judgment. (Docs. 19, 24, 28.)

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 55(b), "a court may enter default judgment against a defendant when (1) both subject matter and personal jurisdiction exist, (2) the allegations in the complaint state a claim against the defendant, and (3) the plaintiff shows the damages to which it is entitled." Senn Brothers, Inc. v. Heavenly Produce Palace LLC, No. CV 119-196, 2020 WL 2115805, at *1 (S.D. Ga. May 4, 2020) (citing Pitts ex rel. Pitts v. Seneca Sports, Inc., 321 F. Supp. 2d 1353, 1356-58 (S.D. Ga. 2004)). Final judgment is appropriate so long as "the pleadings state a substantive cause of action and contain a sufficient basis to support the relief sought." Kennedy v. NILA Invs., LLC, No. 2:19-cv-090, 2020 WL 3578362, at *1 (S.D. Ga. July 1, 2020) (citing Tyco Fire & Sec., LLC v. Alcocer, 218 F. App'x 860, 863 (11th Cir. 2007)); see also Surtain, 789 F.3d at 1245 (holding default judgment is merited only "when there is a sufficient basis in the pleadings for the judgment entered" (internal quotation marks and citation omitted)).

Further, a "defaulted defendant is deemed to admit the plaintiff's well-pleaded allegations of fact" set forth in the complaint. Surtain, 789 F.3d at 1245 (quoting Cotton v. Mass. Mut. Life Ins. Co., 402 F.3d 1267, 1278 (11th Cir. 2005)); Eagle Hosp. Physicians, LLC v. SRG Consulting, Inc., 561 F.3d 1298, 1307 (11th Cir. 2009) ("A defendant, by his default, admits the

5

plaintiff's well-pleaded allegations of fact, is concluded on those facts by the judgment, and is barred from contesting on appeal the facts thus established." (internal quotation marks and citation omitted)). Although well-pleaded allegations of fact are deemed admitted, a defendant "is not held to admit facts that are not well-pleaded or to admit conclusions of law." Surtain, 789 F.3d at 1245 (citation and internal quotation marks omitted).

### III. DISCUSSION

As stated previously, Defendants failed to appear, plead, or otherwise defend themselves in this action. Accordingly, default judgment is appropriate if the requirements are met. See Senn Brothers, 2020 WL 2115805, at *1 (citation omitted). The Court addresses each requirement in turn.

**A. Jurisdiction and Venue**

The Court first considers jurisdiction and venue.

**1. Subject-Matter Jurisdiction and Venue**

Plaintiff filed its complaint on July 20, 2023, invoking the Court's subject-matter jurisdiction under 28 U.S.C. § 1332. (Doc. 1, at 1.) Section 1332 provides district courts subject-matter jurisdiction in cases between citizens of different states where the amount in controversy exceeds $75,000.00. 28 U.S.C. § 1332(a)(1). Plaintiff is a limited liability company ("LLC") whose sole member — Georgia Finco Holding Corporation — is a

corporation incorporated and with its principal place of business in Georgia. (Doc. 30, ¶ 18.) Therefore, Plaintiff is a Georgia citizen for § 1332 purposes. See Rolling Greens MHP, L.P. v. Comcast SCH Holdings L.L.C., 374 F.3d 1020, 1022 (11th Cir. 2004); see also 28 U.S.C. § 1332(c)(1). Defendants are all citizens of Texas because: (1) Defendant Gruner resides in Texas and intends to remain there indefinitely; (2) Defendant Gruner Enterprises is an LLC whose sole member is Defendant Gruner, a Texas citizen; and (3) Defendant Carisma is a corporation that is incorporated and has its principal place of business in Texas. (Doc. 30, ¶¶ 19-21); Travaglio v. Am. Express Co., 735 F.3d 1266, 1269 (11th Cir. 2013) (citation omitted); Rolling Greens, 374 F.3d at 1022; 28 U.S.C. § 1332(c)(1). Moreover, Plaintiff seeks damages of $443,080.55 under the settlement agreement, so the amount-in-controversy requirement is met. (Doc. 1, at 3.) Therefore, 28 U.S.C. § 1332 provides the Court subject-matter jurisdiction over Plaintiff's complaint.

Additionally, venue is proper in the Augusta Division of the Southern District of Georgia under 28 U.S.C. § 1391(b)(2) because the settlement agreement was formed to resolve litigation then pending before this Court. (See id. at 2-3.)

2. Personal Jurisdiction

The Court also has personal jurisdiction over Defendants. To determine whether a nonresident defendant is subject to personal

7

jurisdiction, the Court must perform a two-part analysis. United Techs. Corp. v. Mazer, 556 F.3d 1260, 1274 (11th Cir. 2009). First, the Court must determine whether the exercise of personal jurisdiction is proper under the forum state's long-arm statute as that statute would be interpreted by the state's supreme court. Id. Next, the Court must determine whether there are sufficient "minimum contacts" with the forum state to satisfy the Due Process Clause of the Fourteenth Amendment. Id.; Int'l Shoe Co. v. Wash. Off. of Unemployment Comp. & Placement, 326 U.S. 310 (1945).

### a. *Georgia's Long-Arm Statute*

Georgia's long-arm statute provides in relevant part:

> A court of this state may exercise personal jurisdiction over any nonresident . . . as to a cause of action arising from any of the acts[ or] omissions . . . enumerated in this Code section, in the same manner as if he or she were a resident of this state, if in person or through an agent, he or she:
> (1) Transacts any business within this state[.]

O.C.G.A. § 9-10-91. To exercise jurisdiction over a nonresident defendant who transacts business within Georgia, Plaintiff must establish:

> [(1)] the nonresident must have purposefully done an act or consummated a transaction in Georgia; [(2)] the cause of action must arise from or be connected with such act or transaction; and [(3)] the exercise of jurisdiction by the courts of this state must not offend traditional [notions of] fairness and substantial justice.

Gateway Atlanta Apartments, Inc. v. Harris, 660 S.E.2d 750, 757 (Ga. Ct. App. 2008) (citation omitted).

8

The Court finds each of these requirements met. First, by negotiating and agreeing to the terms of the settlement agreement in the Underlying Action, Defendants purposefully acted or engaged in a transaction in Georgia. See Innovative Clinical & Consulting Servs., LLC v. First Nat'l Bank of Ames, 620 S.E.2d 352, 355 (Ga. 2005) (holding "O.C.G.A. § 9-10-91(1) grants Georgia courts the unlimited authority to exercise personal jurisdiction over any nonresident who transacts *any* business in this State," subject to the Fourteenth Amendment's constraints (emphasis added)). Second, this case asserts a breach of contract claim arising from Defendants' failure to pay Plaintiff as required by the settlement agreement, satisfying the second prong. (Doc. 1, at 3-4.) Third, on the facts and for the reasons discussed in further detail below, the Court finds the exercise of personal jurisdiction would not offend traditional notions of fairness and substantial justice. See Lima Delta Co. v. Glob. Aerospace, Inc., 752 S.E.2d 135, 140-41 (Ga. Ct. App. 2013); Del Valle v. Trivago GMBH, 56 F.4th 1265, 1277 (11th Cir. 2022) (applying factors substantially similar to those applied in Lima Delta). Therefore, the Court finds exercising personal jurisdiction over Defendants proper under Georgia's long-arm statute.

b. *Fourteenth Amendment's Due Process Clause*

Turning to the second part of the personal jurisdiction analysis, the Court finds Defendants have sufficient "minimum

9

contacts" with Georgia to satisfy the Fourteenth Amendment's Due Process Clause. See Mazer, 556 F.3d at 1274. "A federal court may exercise two forms of personal jurisdiction: general jurisdiction and specific jurisdiction." Lewis v. Mercedes-Benz USA, LLC, 530 F. Supp. 3d 1183, 1208 (S.D. Fla. 2021). "[F]or an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile." Daimler AG v. Bauman, 571 U.S. 117, 137 (2014) (citations omitted). And general jurisdiction may be asserted over a foreign corporation only where the corporation's "affiliations with the [s]tate are so 'continuous and systematic' as to render [it] essentially at home in the forum [s]tate." Id. at 139 (quoting Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 919 (2011)). General jurisdiction does not apply here because Defendant Gruner is domiciled in Texas, and there is no indication Defendants Gruner Enterprises or Carisma have the requisite "continuous and systematic" affiliations with Georgia that would make them essentially at home in the state. (Doc. 30, ¶¶ 19-21); see Daimler, 571 U.S. at 137, 139. Thus, the Court must have specific jurisdiction to have personal jurisdiction over Defendants.

To determine whether the Court may exercise specific jurisdiction over Defendants, it examines whether (1) Plaintiff's claim "arise[s] out of or relate[s] to" one of Defendants' contacts with Georgia; (2) the nonresident Defendants "purposefully

10

availed" themselves of the privilege of conducting activities in Georgia; and (3) "the exercise of personal jurisdiction is in accordance with traditional notions of fair play and substantial justice." Del Valle, 56 F.4th at 1275 (internal quotation marks and citation omitted). The Court finds each of these prongs is met.

"The first prong — which addresses the concept of relatedness — focuses on the causal relationship between the defendant, the forum, and the litigation." Id. (internal quotation marks and citation omitted). Although direct causation is not required, the first prong is satisfied because Plaintiff's breach of contract claim arises directly from Defendants' contact with Georgia; specifically, the creation of the settlement agreement in the Underlying Action and their alleged breach of that agreement. (Doc. 1, at 2-4); see also Ford Motor Co. v. Montana Eighth Jud. Dist. Ct., 592 U.S. 351, 362 (2021) ("[W]e have never framed the specific jurisdiction inquiry as always requiring proof of causation — i.e., proof that the plaintiff's claim came about because of the defendant's in-state conduct." (citation omitted)).

"As to the second prong — which concerns purposeful availment — there are two applicable tests: the effects test and the minimum contacts test." Del Valle, 56 F.4th at 1275-76 (citing Calder v. Jones, 465 U.S. 783, 790 (1984); Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 776 (1984)). Since Plaintiff's only claim is a

11

breach of contract claim and the effects test concerns a nonresident defendant's tortious conduct in the forum state, only the minimum contacts test applies here. (Doc. 1, at 3-4); Licciardello v. Lovelady, 544 F.3d 1280, 1285-88 (11th Cir. 2008).

> The minimum contacts test assesses the nonresident defendant's contacts with the forum state and asks whether those contacts (1) are related to the plaintiff's cause of action; (2) involve some act by which the defendant purposefully availed himself of the privileges of doing business within the forum; and (3) are such that the defendant should reasonably anticipate being haled into court in the forum.

Del Valle, 56 F.4th at 1276 (citation omitted). To apply this test, the Court identifies all relevant contacts Defendants have with Georgia and asks whether those contacts, individually or collectively, satisfy the criteria. Id. (citation omitted).

Relevant here, Defendants' contacts with Georgia are: (1) they negotiated and agreed to a settlement agreement in the Underlying Action with Plaintiff, a Georgia resident; (2) they made some payments to Plaintiff as required under the settlement agreement; and (3) they allegedly breached the settlement agreement by defaulting and not curing their default, causing injury to Plaintiff. (See Doc. 1, at 2-3.) The Court finds these contacts sufficient to satisfy the minimum contacts test. See Del Valle, 56 F.4th at 1276 (citation omitted). First, as explained above, Plaintiff's cause of action arises directly from Defendants' contacts with the forum. Second, Defendants

12

"deliberately 'reached out beyond' [their] home" by "entering a contractual relationship" in Georgia, thus availing themselves of the benefits and protections of Georgia's laws regarding enforcement of contracts. Ford Motor Co., 592 U.S. at 359 (quoting Walden v. Fiore, 571 U.S. 277, 285 (2014)). Because Defendants later allegedly breached this contract, there is "an affiliation between the forum and the underlying controversy" sufficient to find Defendants' contacts satisfy the second prong. Id. (quoting Bristol-Meyers Squibb Co. v. Superior Ct. of Cal., S.F. Cnty., 582 U.S. 255, 262 (2017)). Third, as Defendants negotiated, finalized, and entered the settlement agreement with Plaintiff to resolve the Underlying Action, Defendants could have reasonably anticipated being subject to suit here if they breached the settlement agreement. Because each criterion of the minimum contacts test is satisfied, the Court finds Defendants purposefully availed themselves of the privilege of conducting activities in Georgia. See Del Valle, 56 F.4th at 1275, 1276 (citation omitted).

The third prong of the specific jurisdiction analysis — whether exercising jurisdiction over Defendants comports with "traditional notions of fair play and substantial justice" — considers four factors: "(1) the burden on the defendant; (2) the forum's interest in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; and (4) the judicial system's interest in resolving the dispute." Id. at 1277

13

(internal quotation marks omitted) (quoting World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 292 (1980)). Each of these factors supports exercising personal jurisdiction over Defendants. Although Defendants are Texas residents, they seamlessly litigated the Underlying Action in this Court for over a year, so any burden on them is insignificant. (See Doc. 1, at 2); Gruner Enters., LLC v. ABC Loan Co. of Martinez, LLC, No. CV 121-007, Docs. 46-88 (S.D. Ga. Jan. 8, 2021). The Court finds any burden Defendants may suffer from litigating in this Court is outweighed by Plaintiff's interest in obtaining convenient and effective relief and Georgia's and this Court's interests in resolving this dispute, which concerns a contract created in Georgia, related to a case previously before this Court, and a breach which injured a Georgia resident. (Doc. 1, at 2-4.) For these reasons, the Court finds exercising specific jurisdiction over Defendants accords with traditional notions of fair play and substantial justice, and the third prong of the specific jurisdiction analysis is satisfied. Based on the foregoing, the Court finds it has personal jurisdiction over Defendants. Mazer, 556 F.3d at 1274.

B. Liability

Since the jurisdictional requirements are satisfied, the Court turns to the merits of the motions for default judgment. Plaintiff asserts a single breach of contract claim. (Doc. 1, at 3-4.) Plaintiff's well-pleaded allegations are outlined above in

14

the background section. Based on those facts, the Court finds Plaintiff sufficiently stated a breach of contract claim.

"The elements for a breach of contract claim in Georgia are the (1) breach and the (2) resultant damages (3) to the party who has the right to complain about the contract being broken." Norton v. Budget Rent A Car Sys., Inc., 705 S.E.2d 305, 306 (Ga. Ct. App. 2010) (citations omitted). Defendants breached the settlement agreement by not making installment payments in October or November of 2022 and not curing their default within ten days of receiving written notice from Plaintiff. (Doc. 1, at 2-4.) Defendants' breach resulted in damages to Plaintiff, which the Court explains in more detail below, and Plaintiff is the party who has the right to complain of the breach. (Id. at 3-4.) Therefore, Defendants are jointly and severally liable for any damages.

C. Damages

Even with a default judgment, "[a] court has an obligation to assure that there is a legitimate basis for any damage award it enters." Anheuser-Busch, Inc. v. Philpot, 317 F.3d 1264, 1266 (11th Cir. 2003). But a court need not conduct an evidentiary hearing when "the plaintiff's claim is for a sum certain or a sum that can be made certain by computation." FED. R. CIV. P. 55(b)(1); S.E.C. v. Smyth, 420 F.3d 1225, 1231 (11th Cir. 2005). Plaintiff requests the Court award $443,080.55 in damages, which accounts for the unpaid balance of $402,777.77 Defendants owe Plaintiff

15

under the settlement agreement and $40,302.78 in attorney's fees and costs. (Doc. 1, at 5; Doc. 19, at 2; Doc. 24, at 2; Doc. 28, at 2.) Plaintiff contends it can be awarded these damages without the Court holding an evidentiary hearing because they are easily computed. (Doc. 19, at 3; Doc. 24, at 2.) The Court agrees.

As for the outstanding balance, these damages are easily calculated because they are the total settlement amount from the settlement agreement minus the amount Plaintiff already received from Defendants, which Plaintiff represents is $402,777.77. (Doc. 1, at 4; Doc. 19, at 1-2; Doc. 24, at 2.) Although the attorney's fees and costs Plaintiff seeks require slightly more work to calculate, they still fall under the category of calculable damages the Court may award without first conducting an evidentiary hearing.

> O.C.G.A. § 13-1-11 provides, in relevant part:
>
> Obligations to pay attorney's fees upon any note or other evidence of indebtedness, in addition to the rate of interest specified therein, shall be valid and enforceable and collectable as a part of such debt if such note or other evidence of indebtedness is collected by or through an attorney after maturity, subject to . . . the following provisions:
>
> . . .
>
> > 2. If such note or other evidence of indebtedness provides for the payment of reasonable attorney's fees without specifying any specific percent, such provision shall be construed to mean 15 percent of the first $500.00 of principal and interest owing on such note or other evidence of indebtedness and

16

> 10 percent of the amount of principal and interest owing thereon in excess of $500.00; and
>
> 3. The holder of the note or other evidence of indebtedness or his or her attorney at law shall, after maturity of the obligation, notify in writing the maker, endorser, or party sought to be held on said obligation that the provisions relative to payment of attorney's fees in addition to the principal and interest shall be enforced and that such maker, endorser, or party sought to be held on said obligation has ten days from the receipt of such notice to pay the principal and interest without the attorney's fees.  If the maker, endorser, or party sought to be held on any such obligation shall pay the principal and interest in full before the expiration of such time, then the obligation to pay the attorney's fees shall be void and no court shall enforce the agreement.  The refusal of a debtor to accept delivery of the notice specified in this paragraph shall be the equivalent of such notice.

O.C.G.A. § 13-1-11(a)(2)-(3).

The settlement agreement provides that, if legal action is necessary to enforce it, "the prevailing Party shall be entitled to recover its reasonable attorneys' fees and costs." (Doc. 1, at 4, 11.) On May 1, 2023, Plaintiff provided Defendants notice of its intent to collect attorney's fees pursuant to O.C.G.A. § 13-1-11 and gave Defendants ten days from their receipt of the notice to pay the balance owed, but Defendants did not comply. (Id. at 4, 27-29.)  Because Plaintiff satisfied the requirements of O.C.G.A. § 13-1-11, it is entitled to an award of attorney's fees and costs totaling $40,302.77, which represents 15% of the first $500.00 owed ($75.00) and 10% of the remaining balance of

17

$402,277.77 ($40,227.77). O.C.G.A. § 13-1-11(a)(2). Therefore, together with the outstanding settlement agreement balance of $402,777.77, Plaintiff shall recover a total of $443,080.55.

### IV. CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** that Plaintiff's motions for default judgment (Docs. 19, 24, 28) are **GRANTED**. The Clerk is **DIRECTED** to **ENTER JUDGMENT** in favor of Plaintiff against Defendants, jointly and severally, in the amount of $443,080.55 and **CLOSE** this case.

**ORDER ENTERED** at Augusta, Georgia, this 4th day of June, 2024.

_____
HONORABLE J. RANDAL HALL
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF GEORGIA